STATE OF HAWAI`I, Plaintiff-Appellee,
v.
EFREN J.K. QUILLAYEN, also known as "Jesse," Defendant-Appellant.
No. 29121.
Intermediate Court of Appeals of Hawaii.
December 30, 2009.
On the briefs:
Phyllis J. Hironaka, Deputy Public Defender, for Defendant-Appellant.
Brandon L.K. Paredes, Deputy Prosecuting Attorney, County of Maui, for Plaintiff-Appellee.
MEMORANDUM OPINION
NAKAMURA, Chief Judge, WATANABE, and LEONARD, JJ.
Defendant-Appellant Efren J.K. Quillayen (Quillayen), appeals from the Judgment filed on March 28, 2008, in the Circuit Court of the Second Circuit (circuit court).[1] Plaintiff-Appellee State of Hawaii (State) charged Quillayen by Felony Information and Non-Felony Complaint with first-degree burglary (Count 1); third-degree assault (Count 2); and abuse of a family or household member (Count 5).[2] The alleged victim in Counts 1 and 2 was John Hellum (Hellum) and the alleged victim in Count 5 was Kimberly Gurgone (Gurgone). Quillayen was Gurgone's current boyfriend and Hellum had been in a prior relationship with Gurgone. The circuit court consolidated the charges against Quillayen with first-degree burglary and third-degree assault charges against Randy Nelson Welch, Jr., (Welch), which arose out of the same incident as Quillayen's charged burglary and assault.
A jury trial on the charges against Quillayen and Welch began on December 3, 2007. At the close of the State's case-in-chief, the circuit court dismissed Count 5 (abuse of a family or household member) against Quillayen, in response to Quillayen's motion for judgment of acquittal and the State's motion to dismiss that count. The jury found Quillayen guilty of firstdegree burglary (Count 1) and third-degree assault (Count 2). It acquitted Welch of the charges against him.
The circuit court sentenced Quillayen to concurrent terms of five years of probation on Count 1 and one year of probation on Count 2. As a condition of probation, the circuit court ordered Quillayen to serve six months of imprisonment, three months of which were suspended as long as Quillayen complied with the terms and conditions of probation.
On appeal, Quillayen contends that the circuit court: 1) plainly erred in instructing the jury on the material elements for first-degree burglary; 2) erred in failing to adequately instruct the jury on the limited purpose for which evidence of Gurgone's verbal statements to a police officer could be considered; and 3) plainly erred in failing to instruct the jury that it could render different verdicts on the counts charged against Quillayen.
We vacate Quillayen's conviction on Count 1 because we conclude that the circuit court's material-elements jury instructions for the first-degree burglary charge were deficient. We remand the case for a new trial on Count 1 and for further proceedings consistent with this Memorandum Opinion. We affirm Quillayen's conviction and sentence on Count 2 for third-degree assault.

BACKGROUND
Quillayen and Gurgone were in a boyfriend-girlfriend relationship and had a young son together. Gurgone had previously been in what she described as a "dating" relationship with Hellum. Hellum knew that Quillayen was Gurgone's current boyfriend, and Hellum was also acquainted with Welch, who was Quillayen's friend.

I.
Quillayen and Gurgone had an argument, and Gurgone called Hellum, seeking comfort and someone in whom she could confide. Later that evening, Gurgone went to Hellum's apartment unit, where the two were intimate. At about half past midnight, while Hellum and Gurgone were in Hellum's bedroom, the doorbell rang. Hellum testified that Gurgone "jumped up," ran into his bathroom, and hid in the shower. Based on Gurgone's reaction, Hellum thought that it was probably Quillayen at the door.
According to Hellum, he got dressed and walked toward the front door. However, before Hellum reached the front door, he heard it open. As Hellum passed the corner of his bedroom door, he saw Quillayen and Welch standing in the hallway inside the apartment. Hellum did not give Quillayen and Welch permission to enter the apartment. Quillayen immediately began yelling "Where's my chick?" and Quillayen and Hellum began throwing punches at each other. Quillayen landed a punch to Hellum's face which caused Hellum pain. Quillayen then went into the bathroom in search of Gurgone, and Hellum and Welch began exchanging punches.
Hellum moved toward the kitchen, and while his back was turned, he was hit over the head with a vase, causing the vase to break and making Hellum feel woozy. Hellum entered the kitchen where Quillayen and Welch jumped on Hellum and began kicking and punching him. Hellum managed to break loose, and he ran out of the apartment, yelling for help, and hid in a parking lot.
Maui Police Department Officer John Fairchild (Officer Fairchild) testified in the State's case-in-chief that on the night of the incident, he responded to Hellum's apartment and met with Hellum. Officer Fairchild observed a cut on Hellum's lower lip and bump on the left side of Hellum's head. Inside the apartment, Officer Fairchild saw a broken and shattered vase in the hallway.
Helium had earlier testified that his front door locked automatically when it closed. Officer Fairchild testified that Helium initially told him that Quillayen and Welch had picked the lock to gain entry. However, there were no pry marks on the lock or other evidence of forced entry. When Officer Fairchild confronted Hellum with these findings, Hellum admitted that the door might have been left unlocked.
The State did not call Gurgone in its case-in-chief. At the close of the State's case-in-chief, the circuit court dismissed the charge of abuse of a family or household member, which was based on allegations that Quillayen had abused Gurgone after entering Hellum's apartment.

II.
Welch called Gurgone as his witness. According to Gurgone, while in Hellum's bathroom, she heard the doorbell ring. Gurgone could not see the front door but she heard Hellum say, "What's up, Bro?"; Quillayen say, "Where is my girlfriend?"; and the door click open. Upon hearing Quillayen's voice, Gurgone started screaming and running around Hellum's apartment because she had been caught "somewhere [she] wasn't supposed to be." At one point, she saw Hellum on top of Quillayen and Quillayen "laying on his back, squirming."
Gurgone testified that later, she found herself alone in the apartment, went to the front door, looked out, and saw Quillayen standing on the stairs. Quillayen asked if Gurgone was ready to leave, then he grabbed her arm and the two went to the parking lot. Gurgone testified that she never heard or saw Welch inside Hellum's apartment and only saw Welch standing outside by his truck after Gurgone left the apartment.
On cross-examination, Gurgone testified that she was still in a relationship with Quillayen, that they lived together, and that they had a son together. The State confronted Gurgone with verbal statements she reportedly had made to Officer Fairchild. Gurgone stated that she did not recall telling Officer Fairchild that she "heard the front door slam open at which time [she] ran into the bathroom." As the State continued to ask Gurgone about her statements to Officer Fairchild, Quillayen's counsel asked for a limiting instruction. The circuit court instructed the jury that for purposes of Gurgone's cross-examination, her "responses are limited to considering whether this witness is credible or telling the truth or not as opposed to whether any particular crimes may have been committed by people here."
The State then questioned Gurgone about whether Quillayen had used physical force to get her to leave Hellum's apartment. Gurgone indicated that Quillayen had not been physically abusive toward her and had only grabbed her hand at the bottom of the stairs and asked if she was ready to go. Quillayen's counsel objected to questions about Quillayen's use of force against Gurgone on the grounds that the questions sought evidence on uncharged conduct that was irrelevant and prejudicial. The circuit court instructed the jury that the charge of abuse of family or household member had been dismissed and expressed its understanding that the questions were being asked upon the issue of credibility.
The State attempted to impeach Gurgone with her statements to Officer Fairchild. Gurgone testified that she did not recall telling Officer Fairchild that Quillayen grabbed her hair and dragged her out of Hellum's apartment and down the stairs. She also did not recall indicating to Officer Fairchild where her hair had been pulled and did not remember clumps of hair falling out from the area of her head that she showed the officer. The circuit court again reminded the jury that because the charge of abuse of family or household member had been dismissed, the State's questions went to Gurgone's credibility and not to Quillayen's guilt on that charge.

III.
Officer Fairchild was called by the State in rebuttal. Officer Fairchild indicated that he took an oral statement from Gurgone shortly after the incident in question. Officer Fairchild recounted the following details from Gurgone's oral statement. Gurgone told Officer Fairchild that while in Hellum's apartment, she heard a knock at the door, Quillayen's voice call out, and the front door slam open. Fearing for her safety, Gurgone ran into the bathroom. Gurgone told Officer Fairchild that she did not witness any of the altercation between Quillayen and Hellum. Gurgone informed Officer Fairchild that "Mr. Quillayen found her in the bathroom, grabbed her by the hair, and pulled her out of the unit." Gurgone also complained of injuries to her head.
Quillayen's counsel then again asked the circuit court to give a limiting instruction. The circuit court agreed and instructed the jury as follows:
The Court will remind the jurors that this evidence is not to be received for purposes of inferring that Mr. Quillayen committed any crimes with regard to Miss Gurgone.
And I'll remind you that the charge of abuse of a family or household member has been dismissed by the prosecution, and it is not to be received for purposes of believing that this particular act, which is being described, may have indicated some propensity of Mr. Quillayen to have committed any other acts which may have been violative of the law. It is merely being received for purposes of questioning the credibility of Miss Gurgone who testified earlier.
Officer Fairchild testified that Gurgone indicated the area of her head that had been injured and that as she put her fingers to her hair, "clumps of her hair came out." Officer Fairchild described Gurgone's demeanor as "very upset" and stated that Gurgone appeared to have been crying.

IV.
In settling jury instructions, Quillayen's counsel argued that the circuit court's proposed jury instructions did not go far enough in explaining the limited impeachment purpose of Officer Fairchild's testimony. Quillayen's counsel requested that the circuit court "amplify" its prior limiting instructions to make clear that Gurgone's statements to Officer Fairchild should not be considered as substantive evidence on the burglary charge. Quillayen's counsel stated:
And I feel like Instruction 15 does not explain to the jurors that the testimony of Officer Fairchild, which the Court instructed can be considered as attacking the credibility of Kimberly Gurgone, should not otherwise be used by the State as direct evidence against my client on Count 1 [(first-degree burglary)], but that would be beyond the limited scope of what the evidence was for.
And so I feel that Instruction 15 should be amplified somehow to explain what the effect of the Court's limiting instruction has been in this trial.
The circuit court denied the request of Quillayen's counsel. The circuit court reasoned that Instructions 15 and 16,[3] taken together, responded to the issue raised by Quillayen and also noted that it had already given limiting instructions during the course of the trial.

DISCUSSION

I.
Quillayen asserts that the circuit court plainly erred in instructing the jury on the material elements for the firstdegree burglary charge.[4] In particular, Quillayen argues that these instructions were deficient because they omitted the requirement that a defendant who remains unlawfully in a building must have the intent to commit therein a crime against a person or property rights. We conclude that the circuit court's material-elements instructions for the first-degree burglary charge were deficient.
The circuit court's instructions on the first-degree burglary charge provided in pertinent part as follows:
There are four material elements of the offense of Burglary in the First Degree, each of which the prosecution must prove beyond a reasonable doubt.
These four elements are:
1. That on or about July 19, 2007, in the County of Maui, State of Hawaii, the Defendant, Efren J.K. Quillayen, also known as "Jesse," as a principal and/or accomplice, intentionally entered unlawfully or intentionally remained unlawfully in a building, to wit, the residence of John Hellum . . . .
And 2. That, when the Defendant unlawfully and intentionally entered the building, the Defendant, at that time, had the intent to commit therein a crime against a person or against property rights; and
3. That the Defendant recklessly disregarded the risk that the building was the dwelling of another; and
4. That the building was the dwelling of another, to wit, John Hellum.
Element 1 of the circuit court's instructions identify two means of committing burglary: entering unlawfully or remaining unlawfully in a building. Element 2, however, only imposes the requirement of proving that the defendant had the intent to commit a crime against a person or property rights for a defendant who enters unlawfully. The circuit court's instructions omit the intent-to-commit-a-crime requirement for a defendant who remains unlawfully in the building. As a result of this oversight, the jury may have been misled into believing that the State was not required to prove "the intent to commit . . . a crime against a person or . . . property rights" with respect to the remaining unlawfully means of committing first-degree burglary. We conclude that the circuit court's instructions on the material elements for the first-degree burglary charge were erroneous.
We further conclude that this error was not harmless beyond a reasonable doubt with respect to Quillayen's burglary conviction. Quillayen's theory of defense to the burglary charge was that Hellum had opened the front door, given Quillayen permission to enter Hellum's apartment, and invited or consented to the confrontation. There was some evidence to support this theory. There were no pry marks on the door's lock or signs of forced entry despite Hellum's claim that the door locked automatically. In addition, Gurgone testified that she heard the door click open after conversation between Quillayen and Hellum. Thus, the jury may have relied upon the remaining unlawfully means of committing first-degree burglary in rendering its verdict. Under these circumstances, we cannot say that there was no reasonable possibility that the circuit court's error might have contributed to Quillayen's burglary conviction. See State v. Kassebeer, 118 Hawai`i 493, 505, 193 P.3d 409, 421 (2008).

II.
Quillayen argues that the circuit court erred in failing to adequately instruct the jury on the limited purpose for which the jury could consider evidence of Gurgone's verbal statements to Officer Fairchild. In particular, Quillayen argues:
The court failed to specifically instruct the jury that Officer Fairchild's hearsay testimony about Gurgone's statements was not to be taken for the truth of the matter. This failure left open the reasonable possibility that the jury, like the judge mistakenly did, would consider those statements as substantive evidence that Quillayen assaulted Gurgone and therefore also entered the unit to assault Hellum.
The circuit court denied Quillayen request to "amplify" its prior limiting instructions to make clear that Gurgone's statements to Officer Fairchild should not be considered as substantive evidence on the burglary charge. Gurgone's oral statements to Officer Fairchild were inconsistent with Gugone's trial testimony and thus were admissible for purposes of impeaching her trial testimony under Hawaii Rules of Evidence (HRE) Rule 613 (1993). However, Officer Fairchild's testimony about what Gurgone had told him was hearsay and therefore was not admissible to prove the truth of the matter asserted or as substantive evidence of Quillayen's guilt on the burglary charge.[5] See State v. Clark, 83 Hawai`i 289, 296-98, 926 P.2d 194, 201-03 (1996).
The circuit court's limiting instructions during the presentation of evidence advised the jury that Gurgone's statements to Officer Fairchild were being received for the purpose of questioning Gurgone's credibility, thereby indicating that such statements should not be considered as substantive evidence of Quillayen's guilt. The limiting instructions, however, also addressed other restrictions on the evidence that may have blunted this message. For example, certain of the limiting instructions emphasized that the charge of abuse of family or household member involving Gurgone had been dismissed. These limiting instructions advised the jury that Gurgone's statements to Officer Fairchild should not be considered as evidence that Quillayen had committed crimes against Gurgone or of Quillayen's propensity to commit crimes, without specifically addressing whether Gurgone's statements could be considered as substantive evidence of Quillayen's guilt on the other charges. Given the various ways that a jury might consider Gurgone's statements to Officer Fairchild, it would have been clearer for the circuit court to specifically advise the jury that such statements could not be considered for the truth of the matter asserted or as evidence of Quillayen's guilt on the charged offenses (including the dismissed abuse-of-family-or-householdmember charge), but could only be considered to evaluate the credibility of Gurgone's trial testimony.
In light of our decision to vacate Quillayen's burglary conviction for error in the material-elements instructions, we need not decide whether the circuit court erred in failing to give a more definitive limiting instruction on Gurgone's statements to Officer Fairchild.[6] However, we recommend that on retrial, the circuit court formulate a limiting instruction that specifically addresses the concerns raised by Quillayen on appeal regarding the hearsay nature of Gurgone's statements.

III.
We reject Quillayen's argument that the circuit court plainly erred in failing to instruct the jury that its verdicts on the burglary and assault charges did not have to be the same. The circuit court instructed the jury that it "must consider separately each count charged against each individual defendant."[7] In addition, the circuit court's jury instructions contained separate instructions on the material elements for the burglary and assault counts and required the prosecution to prove the material elements applicable to each count beyond a reasonable doubt. The verdict forms also clearly gave the jury the option reaching different verdicts as to each count charged against Quillayen. We conclude that the circuit court's instructions were sufficient to apprise the jury that it could reach different verdicts on the burglary and assault counts and accordingly that the circuit court did not err in instructing on this issue.

IV.
We conclude that none of the points of error raised by Quillayen on appeal warrant our vacating Quillayen's third-degree assault conviction or sentence. As noted, the circuit court's instructions adequately apprised the jury that its verdicts on the burglary and assault charges did not have to be the same. The circuit court properly instructed the jury on the material elements for the third-degree assault charge, and we fail to see how the circuit court's error in instructing on the materialelements for the burglary charge could have affected Quillayen's assault conviction. Officer Fairchild testified that in Gurgone's statements to him, Gurgone said that she did not see any of the altercation between Quillayen and Hellum. Thus, any error in the circuit court's failure to give a more definitive limiting instruction regarding the jury's consideration of Gurgone's statements to Officer Fairchild was harmless beyond a reasonable doubt at to Quillayen's assault conviction. Finally, there was considerable evidence supporting Quillayen's thirddegree assault conviction, including Hellum's testimony, evidence of the injuries Hellum sustained, the cracked vase found in Hellum's apartment, and the testimony of Hellum's neighbors that they heard loud banging coming from Hellum's apartment. Under these circumstances, we see no basis for vacating Quillayen's conviction and sentence on the third-degree assault charge.

CONCLUSION
We affirm the portion of the circuit court's March 28, 2008, Judgment that pertains to Quillayen's conviction and sentence on Count 2 for third-degree assault. We vacate the portion of the circuit court's Judgment that pertains to Quillayen's conviction and sentence on Count 1 for first-degree burglary, and we remand the case for a new trial on Count 1 and for further proceedings consistent with this Memorandum Opinion.
NOTES
[1] The Honorable Joel E. August presided.
[2] The State also charged Hellum in Counts 3 and 4 with second-degree unlawful imprisonment, but those counts apparently were rejected as not supported by probable cause and were stricken from the Felony Information and Non-Felony Complaint.
[3] Jury Instructions Numbers 15 and 16, as given by the circuit court, stated as follows:

Number 15. Each defendant is entitled to have his case decided solely on the evidence that applies to him. Some of the evidence in this case was limited to one of the defendants and cannot be considered in the case of the other. You must limit your consideration of that evidence to the defendant to whom the evidence was admitted.
Number 16. You must give separate consideration to the evidence that applies to each individual defendant. You must consider separately each count charged against each individual defendant. The fact that you may find a defendant not guilty or guilty of one of the counts charged does not mean that you must reach the same verdict with respect to the other defendant. You must return a separate verdict for each defendant.
[4] Quillayen was charged with committing first-degree burglary, in violation of Hawaii Revised Statutes (HRS) § 708-810(1)(c) (1993), which provides:

(1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
. . .
(c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.
[5] The State does not contend that Gurgone's prior inconsistent statements were admissible as substantive evidence.
[6] We discuss infra, in Discussion Section IV., why any error in the circuit court's failure to give a more definitive limiting instruction was harmless beyond a reasonable doubt as to Quillayen's third-degree assault conviction.
[7] The jury instruction at issue is Jury Instruction 16 which is quoted in full in footnote 3, supra.